May it please the Court. I would like to address this appeal in two sections. The first section addresses the question of jurisdiction and whether there is jurisdiction to consider the second issue of this case, which is whether 37 CFR 42.73 has been properly interpreted. Of course, you can use your time as you wish, but I think that we're willing to concede jurisdiction for the purpose of this argument. If it turns out that that's incorrect, of course we'll decide otherwise. Thank you, Your Honor. I understand that decision has already been considered en banc in terms of those issues. Let me rephrase. I'll move on to the second subject, which is the subject of whether the agency committed plain error or acted in a way that was inconsistent with the regulation. Could I ask you at the outset, you're not contending that the PTO doesn't have the authority to adopt a regulation providing for a stop on the cancellation of a patent or a claim, right? That is correct. We are not contending that the Patent Office does not have authority. We're not contending that, Your Honor. The question is how to interpret this regulation. That is correct. In that regard, if we look at the plain language of the rule, there's the first part of the rule that provides that the patent owner may elect or may inform the Patent Office that it will pursue an adverse or will request an adverse judgment. Then there are enumerated actions by the patent owner that constitute that request. In this case, the Patent Office disregarded what I consider to be the plain language of the statute, which is that if there's going to be a voluntary disclaimer of the claims, and that occurs prior to trial, then there should be no issue with regards to the entry of an adverse judgment, because the rule specifically says that when there is a voluntary disclaimer in trial, that is when disclaimer takes place in the Patent Office. Why would that be an appropriate interpretation of the rule, given the fact that under subsection 1 and subsection 3, let's take subsection 1 first, that if you cancel the entire patent, it doesn't make any difference when you do that in the proceeding, and the rule is pretty explicit about that, isn't it? That's correct, Your Honor. In fact, that actually supports our position, because in those instances, the Patent Office was very specific that it could enter adverse judgment, or those actions would be considered an entry of adverse judgment, but then when it came to the issue of voluntary disclaimer, it was clear that that would only occur in the trial. Why would the Patent Office make a distinction between the cancellation of an entire patent, which would create an estoppel whether it happened before or after trial, and the cancellation of an individual claim, where under your theory, there's no estoppel if it happens before trial, but there is an estoppel if it happens after the trial is instituted? Let me suggest that, of course, I don't know exactly what the Patent Office was thinking, and there's not much in history to describe that, but I would submit that if you cancel the entire patent, let me just say that in this case, we had two IPRs relating to the same patent. The first of the IPR covered claims 1 through 9. The second IPR covered claims 10 through 11, and so from my perspective, this is precisely what the rule was intended to cover, was that if somebody wanted to split their IPRs and split up the challenges for those patents, that we would have the freedom to then decide which IPRs we were going to battle, which IPRs we were not going to battle, and I think that's an important distinction here, because... So your theory is that you accept that you could not sue the same defendant on the disclaimed claims in some other proceeding, is that correct? Your Honor, I agree... That there would be an estoppel of some sort, at least between these parties, for the disclaimed claims? I would submit that we are not entitled to assert those disclaimed claims. With regards to whether there should be an estoppel effect, obviously that is the... Okay, so then the next step that you argue is that nonetheless, claims that are not patently distinct can be obtained in your pending continuation? And that is correct, Your Honor, and that's... That those same claims, then, that are not patently distinct could be asserted against the same defendant, or only against other defendants? Your Honor, from my perspective, and the way I view it, is that it should be, the party should be free to assert those claims. There are, of course, safeguards in place, the safeguards of this would still have to go through the prosecution, the continuation would still have to go through the prosecution of the patent office. There are issues of statutory double patenting, and there are other issues... How can it be double patenting if the claims are disclaimed? Your Honor, it was my understanding, and maybe my misunderstanding, that as long as the claims were issued, that we wouldn't be able to... And if it's double patenting, that's just cured by a terminal disclaimer, is it not? Not if it's statutory double patenting, as I recall, Your Honor, but I would submit that when there is a disclaimer, there's a specific giving up of the rights of those particular claims per section, I believe, 253. So what I hear you're saying is that the effect of disclaiming claims 1 to 9 is that that interaction on this IPR, but has no other adverse effect. I don't agree with that, Your Honor. I believe the adverse effect is we would not be able to obtain the same claims, and that's part of the... What claims that are not patentably distinct, you say, are not the same, even though they cover the same invention? Your Honor, if they're not patentably... Well, let's just say that the question of whether we would be able to obtain those claims, I submit that that's part of the, I believe, the regulation itself, and I don't believe that it's within the discretion of 37.73B, which provides these are the instances in which our action, and of course, this all goes to the patent owner's own voluntary actions. It doesn't go to how the patent office should rule unilaterally on our actions. It goes to whether the patent owner wants to take an action, and of course, the statute permits that action, to forego the issue of the IPR. If we give the board discretion to decide these issues, irrespective of in the trial language that's specifically in the rule, or otherwise, then in a sense, it's a blank check because if we're patent owners, we're looking at these statutes for guidance as to what actions we should take that may have some consequence, then we should have some understanding of what that effect will be. But if it's a question of just equity, it's unfair, or it's not right, then the problem arises that patent owners are left at sea. So what should the action be? You disclaim all of the claims that have been challenged and that have been instituted? Correct, Your Honor. And now what? And then at that instance... Has no adverse consequence at all, I gather, is your position. Well, I think there is an adverse consequence in the sense that we have to go back to the patent office and see... Is that adverse? You get the same claims in another case? I think that would be very challenging from the patent examiner because... Because they can't cite these claims because they're not prior art. So what can they cite? Can they say you disclaimed? You're saying that's the same as where we are now. So you're saying that the patent office, the examiner, cannot cite the fact that you disclaimed the same invention in the IPR. You say that cannot be cited against the continuing applications. Your Honor, I would submit that, first of all, the patent office would be alerted of these proceedings because of the IES... Your position is that they can't cite it against you because the fact that it's patently indistinct is irrelevant. The cancellation has no effect on these patently indistinct claims, right? I guess I read Section 253 as requiring us to give up the rights to those particular  But that's your argument. Plus, there's intervening rights as well, right? Correct. So what if you were in district court, for instance, and you decided to disclaim these claims? Do you think that the patent office could simply issue an order cancelling the patent? Say there was no IPR. What effect would that have? Would the patent office just come right out and say, we heard about this disclaimer in district court, so we're just going to cancel your patent? And the fact that's a possibility, and that's a concern that would have a chilling effect. How is that a possibility? How could that happen? I think that's an important question. Because my problem is, there's never an instituted IPR here, right? My apologies, Your Honor. Right? There was never an instituted IPR. So we don't even have an IPR. We have a petition to institute. So what if there had been no even petition to institute, and you had disclaimed these claims somewhere else, in some other forum? Could the patent office just decide on its own that it wants to cancel your patent? It would have the effect of a cancellation because the claims were disclaimed. Right. But it's not an order from the patent office, correct? That is correct. All right. So what my problem is, and maybe this goes back to Judge Dyke's original question, is that the PTAB, as a panel, panels of the PTAB have been given authority, have been delegated the authority to conduct IPRs, right? And they've been delegated the authority to institute IPRs. I don't know of any place where they've ever been delegated any authority to act outside the confines of an IPR. But you're saying you're not arguing that. I'm not arguing that the effect of a disclaimer prior to institution, or even prior to the filing of a petition, would have an effect. But don't you have to argue that claims 1 to 9 could not be canceled? Claims? I'm sorry, Your Honor? You're not arguing that claims 1 to 9 could not be canceled. Is that what you're saying? I'm arguing that claims 1 through 9 have been canceled. I'm afraid that I'm not quite sure I follow. But that it has no adverse effect. And that's, yes, Your Honor, that's what we're arguing. And I think there's, I think the issue here, and Judge O'Malley brought this point up, which is the patent office has delegated the authority to the board to make these determinations. But the patent office itself has promulgated a regulation that, on its face, suggests that disclaimer should occur in the trial. And in effect, we are disagreeing. Well, not with respect to if the disclaimer of the entire patent occurs. It's perfectly clear that if that happens before trial, it still happens in the proceeding as defined by the regulations. The proceeding commences with the filing of the petition, right? That is correct, Your Honor. And that's precisely why in the trial has so much significance, because it distinguishes a particular action from the situation Your Honor spoke about. So if your continuing applications, the claims that are not patently distinct are granted, is your position that those claims can then be enforced against the same defendant? Your Honor, there would be no stoppable effect. And that hypothetical is possible, but I hope that the patent office would do its job. And since there would be the requirement that we disclose these proceedings. But doing its job is what? To allow the claims that are not patently distinct, or not to allow the claims? Well, Your Honor presumes that we could not have argued this challenge in the first place. And that's precisely why I believe the patent office gave patent owners the opportunity. You want to get claims that are not patently distinct from the ones that are canceled, right? Well, Your Honor, that's correct. But I would say sometimes in, let's just take an example, since we're talking about hypotheticals, there's a claim language or a claim that exists, and for some reason the wording isn't quite right. And it says nothing about the effect or validity of the patent itself. It says, perhaps these claims should be clarified, and we should have the opportunity to pick and choose the battles that we'd have. And Your Honor, I recognize that I have about a minute and 23 seconds remaining. Yes, let's hear it from the other side. Mr. Speed, we have a situation that the drafters of the America Invents Act didn't get to. Correct. We're right in the middle of all sorts of technicalities, are we not? I would suggest that we're not dealing with technicalities. We're talking about jurisdiction at this point on the technicalities. The St. Jude decision is quite clear that the decision under 1295A4 are only final written decisions under 318A. So they say that 1295 and 318 are coextensive, right? But St. Jude wasn't dealing with the kind of situation that we have here, right? Correct. They were not dealing with the precise type of decision that the patent office or the board issued. In this case, they were dealing with a non-institution decision. The appeal bar doesn't apply here, right? Correct, but I would submit that the reasoning of St. Jude, they walked through the entire America Invents Act. They looked first at 318, which provides that the board must issue a final written decision on the patentability of the claims. They then looked at 319, which is titled appeal, and it states that a party dissatisfied with the final written decision under 318A may appeal pursuant to 141C. Under your reading of St. Jude? Yes. There would never be the ability to appeal from this kind of a cancellation whether it occurs before institution or after institution, right? There would not be jurisdiction under 1295A4. So that nobody gets to review a cancellation of a patent? If a cancellation of a patent, if mandamus could be an appropriate vehicle in certain circumstances, where the cancellation isn't based on a discretionary regulation, as we've been talking about today, under mandamus, Arthrex has the burden to prove that they have a clear and indisputable right to the relief that they seek. But you're saying there is never any appeal whether this occurs pre-institution or post-institution from this kind of cancellation of the patent? I would submit that that is the implication of the St. Jude decision. But on its face, 1295 would apply here, right? Quite apart from the possible notion that it has to be co-extensive with 318. Let's put that aside. On the face of it, 1295 seems to apply to this situation, doesn't it? Because we have appeal over a decision. Correct. And absent St. Jude, there may be some strength in that argument. But St. Jude read that statute and said it's most naturally read to refer precisely to the Board's decisions under 318A on the merits of the inter partes review after it conducts the proceeding. But that was only in the context of considering the appeal bar. In other words, a final decision versus a decision to institute. I would respectfully disagree. The appeal bar was cited in the St. Jude decision. But it was cited after the panel had walked through the 318, 319, and 141C. They essentially pointed to the appeal bar as icing on the cake that supported their interpretation of decisions in light of the AIA. And subsequent decisions of both this Court and notably the Quosa decision have clarified the role of the appeal bar under 314D. And the role of the appeal bar is to limit the issues that can be reviewed when you have the proper appellate vehicle ID. So on your theory that there's no appeal, all of the results favorable to the patent owner that Mr. Cho has been presenting would flow without any debate. And there you would be worse off than perhaps if there's some sort of action or reviewing finality. I would agree that this Court should dismiss this appeal and that the order should remain, which would have an adverse judgment of estoppel effect on our flexibility to... It would be an estoppel. It's over. There's no estoppel. The claims were removed before decision. It can't be an estoppel without a decision. Well, so Arthrex's action in disclaiming its claims would have resulted in the Patent Office making a decision that is unreviewable under 1295A that their decision to disclaim the claims can be construed as a request for adverse judgment. This is not appealable? It doesn't count? It's not appealable via 1295A. I also don't believe it would be appealable through mandamus. I think that's a hard position. Maybe you want to talk about the merits of this? I will do so. As to the merits, you can see that several other panels, PTAP panels, have said they have no authority to take this kind of action, isn't that correct? Under the regulation or otherwise. There are no decisions that Arthrex cited to this Court that hold that. I'm not aware of any decision that says that. There are seven decisions that the parties submitted to the Board down below and that the Board identified in its decision. Three, GlobalTel, HOSFRA, and another Smith and Nephew case versus Bonuti. There was a pretrial disclaimer of the claims and the PTAP entered adverse judgment. Those three panels clearly interpreted the regulation to permit adverse judgment in precisely this scenario. There were then two cases, FCA and the RPX decision, where the panel decided not to enter adverse judgment in light of a pre-institution disclaimer. In each of those decisions, the Board said it had the authority to do so. It was just exercising its discretion not to. Let me ask you this, how could the Board have authority to act outside the institution of an IPR? The Director has argued to us that the Director delegated the authority to the PTAP to institute. This Court has accepted the proposition that the Director had the authority to delegate that. In the Federal Register, the Board also says she has delegated the authority to the PTAP to conduct IPRs. In this instance, there has never been an IPR instituted. How could they have authority to act outside the context of an instituted IPR? Even if the Director could, how could the PTAP? Under 37 CFR 4273B, the adverse judgment regulation provides that a party may request judgment during a proceeding. A proceeding is defined in the regulation as beginning with a preliminary proceeding, which is once the petition is filed up to the institution decision. Then there is a trial, which is the institution decision to the final written decision. A proceeding, which is what the regulation is referring to, begins the moment a petition is filed. They were acting within the confines of an IPR proceeding. We simply weren't at the point of a trial. I would submit that the regulation doesn't require that the trial actually occur before the Board has the authority to construe a patent order that disclaims all of their claims as a request. It's not the question. The question is does it require that the institution occur? I believe that the Board below properly read the regulation to provide that it is required to enter adverse judgment when one of the four delineated events occur. It has the authority to enter adverse judgment when other events occur. The question is, is the regulation in accordance with the statute? Correct. Doesn't our Shaw decision specifically say that estoppel can only apply with respect to claims as to which institution actually occurred? That estoppel applies when there has been a final written decision. No, it says on grounds on which institution has occurred. Correct. My understanding of the Shaw decision would be to distinguish claims that were considered during the actual trial proceeding from claims that were never instituted in the first instance. If the claims that were not instituted in the first instance in Shaw had been disclaimed pretrial, then we might have a scenario where the Board could have found that pretrial disclaimer was a request for adverse judgment. I apologize if I haven't answered your question fully. My understanding of Shaw is that is addressing what happens when a petitioner loses. Shaw specifically says we don't even consider issues of estoppel until the point of institution, correct? Under the petitioner estoppel provision. Different kind of estoppel. This is a patent owner estoppel provision which is under 47.73B It's 47.73B that provides for adverse judgment against a patent owner. It specifically says that the patent owner may take actions during the proceeding that the Board will construe as a request for adverse judgment. As far as I know in the briefing it's suggested that there's some inconsistency or disagreement between panels before the Board, but there simply isn't. There are the three decisions where the adverse judgment was entered. There's RPX and CDETEC or RPX and FCA where the Board found that it had authority to enter adverse judgment. Then you have the two cases, Cool Systems IT and Tandis Flooring where there was a pretrial disclaimer claimed and there was no adverse judgment entered. In those decisions the adverse judgment regulation was never mentioned by the Board or the party. There's no guidance from those cases as to how that panel would have interpreted this regulation if presented with that issue. Every panel that has reviewed this regulation has reviewed it in the way that Smith and Effie suggested below and that the Board below found. No one has read it in the way that Arthrux is construing the statute, so I respect to submit that that suggests that the Board's reading of its own regulation is at least reasonable and certainly not plainly erroneous. Then the application of that regulation to the facts of this case where you have a patent owner that has disclaimed all its claims in the face of a strong petition and admittedly has pending continuation applications, which we've heard today they want to procure patently indistinct claims so that my client will be held under threat of potential future litigation over those claims. As the Board found below, we are entitled to finality and repose on those claims and all other claims that are patently indistinct from those claims. There was some reference to a second petition on which the petition was instituted, same prior art and similar arguments that were raised in the first petition on Claims 1-9 and we recently received a final written decision cancelling Claims 10 and 11 under that same prior art. Unless there's any further questions from the panel, I'll see you the rest of my time. Thank you, Mr. Smith. Mr. Cho? Your Honor, as I will be very, very brief because I have to be brief, in that regard I'd like to address the issue about the authority of the Board to enter an adverse judgment. The statute or the regulation makes very clear that that authority comes from the patent owner itself because the patent owner must request or take action that could be construed as such a request. We clearly did not do that here. Nobody disputes that we in fact stated very clearly that we are not seeking or requesting adverse judgment. Without that request, the Patent Office or Board did not have the authority to enter adverse judgment. I would also submit that again the timing by the Patent Office is critical here because the Patent Office says in Subsection 2 in the trial and in no other subsection of that statute is that stated. I think we are entitled to rely on that as a matter of notice and the regulations of the Patent Office. I think to rule otherwise is an abuse of discretion and I think that's the issue we have here, Your Honor. We have this notice. It says these are the instances when adverse judgment will enter and the Patent Office indicated in the trial has some significance. That's all, Your Honor.